### ALTMAN v. WESTERN UNION TEL. CO.

(Supreme Court, Appellate Term. January 2, 1903.

**1. TELEGRAPH COMPANIES—ERRORS—DAMAGES.**

Where a message signed "Altman" was as easily read "A. H. May," and was so sent by defendant telegraph company, the negligence was not so gross as to destroy the provision on the contract under which it was sent, limiting defendant's liability to the amount paid for sending the message.

**2. SAME—RESENDING MESSAGE.**

Where a telegram for money sent by plaintiff from Toledo, Ohio, to New York City, was delivered Saturday, 2:30 p. m., but on account of an error was ineffectual, and the company agreed to resend it, they were not liable for failure to deliver the corrected message until the following Monday, it not appearing when the corrected message was agreed to be sent, or what time was ordinarily required for such sending, nor how far the person to whom it was sent resided from the telegraph office.

**3. SAME—SPECULATIVE DAMAGES.**

A telegram for money sent by plaintiff, a traveling salesman, was not delivered for several days, and meanwhile plaintiff, in order to continue on his way, borrowed money by leaving his sample trunk as security. The trunk was forwarded to him four days later at a cost of $4. Plaintiff testified that his average earnings were from $40 to $50 per week, and the toll for sending the message was 80 cents. *Held*, in an action against the telegraph company, in which plaintiff recovered a judgment for $40.80, that the damages were too remote and speculative.

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Philip E. Altman against the Western Union Telegraph Company for error in sending a message. Judgment for plaintiff for $40.80, and defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and CLARKE and GREENBAUM, JJ.

George H. Fearons and Rush Taggart (Francis R. Stark, of counsel), for appellant.

Alexander Rosenthal, for respondent.

CLARKE, J. Plaintiff, a traveling salesman for S. Cohen & Co., of this city, was at the Boody House in Toledo, Ohio, with his trunk of samples, when he received a telegram from his house ordering him home. This was some time on Saturday morning. He wrote out on one of the defendant's blanks a telegram as follows: "S. Cohen & Co. 78 Walker St. New York City. Wire me twenty dollars immediately Altman." The signature was not plain and distinct. It can be read as plainly "A. H. May" as "Altman." It was delivered at the store of S. Cohen & Co., with reasonable dispatch, at about 2:30 p. m. of the same Saturday. When delivered it bore the signature "A. H. May." It had been sent "collect," and its acceptance was declined; addressee indorsing thereon, "Don't know A. H. May." Plaintiff, having ascertained from the company that the dispatch had not been accepted by his house, testified that, having told the company's representative at Toledo the importance of getting word to his house so that he could get away from Toledo that afternoon, that representative told him that the message would be corrected immediately, and forwarded and delivered to plaintiff's firm in New York with the corrected name. Not receiving an answer that afternoon, on Sunday he borrowed $20 from the proprietor of the hotel, and, leaving his trunk as security, returned to New York on Sunday afternoon. The corrected telegram was delivered on Monday morning. His trunk was sent by express to him at a cost of $4, but did not arrive for four days. He testified that his average earnings while on the road were from $40 to $50 per week. Among the conditions on the back of the blank on which the original message was sent, and which have uniformly been held to be a part of the contract (Kiley v. Western Union Tel. Co., 109 N. Y. 236, 16 N. E. 76), were the following:

"To guard against mistakes or delays, the sender should order it repeated; that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of nonrepeated messages beyond the amount received for sending the same; nor in any case for errors in cipher or obscure messages."

If the case rested upon this original message, this judgment could not stand, for it was promptly delivered to the proper addressee, and the only mistake was in the signature. And, with the original before the court, we must say that it is as easily read as sent as intended. It would therefore come under the clause of "obscure messages," or, in any event, the negligence could not be held so gross as to destroy the provision limiting liability to the amount paid for the message. What the sender had paid for had been done. The message he had written

nad been sent and delivered, and, if mistake there was, the utmost that could be received would have been the toll therefor, 80 cents. We do not see how the case is helped by the attempted correction. It is in evidence that the first message was delivered at about 2:30, and that Cohen & Co. closed from 4 to 5 o'clock on Saturday afternoon. It was not proved when the second message was agreed to be sent, there was no evidence as to the time ordinarily consumed in the transmission of a telegram from Toledo to New York, the distance from the nearest telegraph office in New York to Cohen & Co's. store, of the time when the corrected copy was received in New York, or other condition or circumstance to enable the court to judge as to what would be a reasonable time for the transmission and delivery of such a message; all of which were necessary parts of plaintiff's case, the absence of proof of which was fatal. Ayres v. Western Union Tel. Co., 65 App. Div. 149, 72 N. Y. Supp. 634.

Another independent ground for reversal is that the damages proved were altogether too remote and speculative.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.